IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALISON MARIE BAVER, and ALISON BAVER ENTERTAINMENT, LLC,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS<br><br>Case No. 2:21-cr-00520-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Defendants' Motion to Dismiss Counts 1–9 of the Superseding Indictment filed by Ms. Alison Marie Baver ("Ms. Baver") and Alison Baver Entertainment, LLC ("ABE") (collectively, "Defendants"). ECF No. 39. The court DENIES Defendants' Motion.

## FACTUAL BACKGROUND

In October 2019, Ms. Baver registered ABE under Utah law. Second Superseding Indictment ("Indictment") at 2, ECF No. 47. Ms. Baver is listed as the sole owner and registered agent of ABE. *Id.* Defendants assert that ABE had received an offer to produce a television series that would be distributed in the fourth quarter of 2020 from A & E Network and had also scheduled two films for production in the spring of 2020. Defs.' Mot. at 3, ECF No. 39.

The mission of the United States Small Business Administration ("SBA") is to strengthen the nation's economy by encouraging small businesses and entrepreneurs. Indictment at 2. The SBA assists small businesses with economic recovery after disasters by providing government backed loans through banks and other lenders. Congress established the SBA's Paycheck

Protection Program ("PPP") in March 2020 to incentivize small businesses to keep their workers on payroll amidst the COVID-19 outbreak. Qualified borrowers could obtain a loan from the SBA under the PPP, and so long as the borrower retained all employees on its payroll for eight weeks and provided documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities payments, the SBA would forgive all or part of the loan. To qualify for a PPP loan, borrowers needed to be operating as of February 15, 2020, and either have employees for whom the borrower paid salaries and payroll taxes or have paid independent contractors as reported on a Form 1099-MISC. Interested applicants could submit a Borrower Application Form to a pre-existing SBA approved lender or a participating federally insured financial institution. Applicants needed to describe the purpose of the loan, average monthly payroll, the number of employees, and the background of the business and its owner on the form. *Id.* at 3.

In April 2020, Ms. Baver submitted eight PPP loan applications on behalf of ABE. Indictment. At the time of submission, ABE neither had employees for whom it had paid salaries and payroll taxes, nor had paid independent contractors as reported on a Form 1099-MISC. *Id.* at 3–8. ABE also did not have payroll expenses. *Id.* Ms. Baver submitted six applications to Northeast Bank, a financial institution headquartered in Portland, Maine, and two applications to Meridian Bank, a financial institution headquartered in Paoli, Pennsylvania. Accounts at both Northeast Bank and Meridian Bank are insured by the Federal Deposit Insurance Corporation ("FDIC"). Ms. Baver submitted the six Northeast Bank applications through Lendio, Inc. ("Lendio"), an online clearinghouse that matches borrowers with lenders. Lendio screens and forwards borrower applications to lenders. Ms. Baver submitted the two Meridian Bank applications directly through Meridian Bank's online portal.

On May 11, 2020, Meridian Bank funded a $10,000,000 PPP loan to ABE and deposited the funds into ABE's Meridian Bank account ending in x2022. *Id.* at 8–9. The next day, Ms. Baver transferred $9,999,500 from ABE's Meridian Bank account ending in x2022 to a separate Meridian Bank account held by ABE ending in x8439. On July 23, 2020, Ms. Baver transferred $150,000 from ABE's Meridian Bank account ending in x8439 to Company X to invest in a film entitled *No Man of God*. *Id.* at 8.

On December 15, 2021, a grand jury charged Ms. Baver with eight counts of False Statement to a Bank under 18 U.S.C. § 1014 and one count of money laundering under 18 U.S.C. § 1957. ECF No. 1. The False Statement to a Bank statute provides in relevant part,

> "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the . . . Small Business Administration [or] . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

18 U.S.C. § 1014. The Money Laundering statute provides in relevant part, "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished . . . ." 18 U.S.C. § 1957. On June 29, 2022, the United States filed a Superseding Indictment adding ABE as a codefendant on the nine charges against Ms. Baver. ECF No. 35. On October 19, 2022, the United States filed a Second Superseding Indictment that added a tenth charge for contempt under 18 U.S.C. § 401(3).[1] The charges are as follows:

---

[1] "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3).

Count One – "On or about April 13, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

> a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and
>
> b. ABE had 100 employees; when, in fact, ABE had no employees."

Count Two – "On or about April 14, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

> a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and
>
> b. ABE had 105 employees; when, in fact, ABE had no employees."

Count Three – "On or about April 16, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

> a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and
>
> b. ABE had 105 employees; when, in fact, ABE had no employees."

Count Four – "On or about April 23, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

> a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and
>
> b. ABE had 430 employees; when, in fact, ABE had no employees."

Count Five – "On or about April 24, 2020, defendant BAVER, on behalf of ABE, completed and submitted a PPP loan application to Meridian Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

    a. ABE's average monthly payroll was $4,769,583; when, in fact, ABE had no average monthly payroll; and

    b. ABE had 430 employees; when, in fact, ABE had no employees."

Count Six – "On or about April 25, 2020, defendant BAVER, on behalf of ABE, completed and submitted a PPP loan application to Meridian Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

    a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

    b. ABE had 430 employees; when, in fact, ABE had no employees."

Count Seven – "On or about April 25, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

    a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

    b. ABE had 430 employees; when, in fact, ABE had no employees."

Count Eight – "On or about April 26, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

    a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

    b. ABE had 430 employees; when, in fact, ABE had no employees."

> Count Nine – Ms. Baver and ABE knowingly engaged and attempted to engage in monetary transactions through a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00 in violation of 18 U.S.C. § 1957. The transactions included (1) depositing $10,000,000 in ABE's Meridian Bank account ending in x2022 on May 11, 2020, (2) Transferring $9,999,500 to ABE's Meridian Bank account ending in x8439 on May 12, 2020, and (3) transferring $150,000 from ABE's account to Company X in order to invest in a film on July 23, 2022.
>
> Count Ten – Defendants failed to comply with a subpoena served on May 6, 2022 ordering Defendants to produce documents relating to bank accounts held, used, or controlled by ABE from October 2019 to December 2020. Defendants also failed to reply to Judge Ted Stewart's September 14, 2022 Order to Show Cause for why Defendants should not be held in contempt.

ECF No. 47. In summary, the United States charged Defendants with nine counts related to the PPP loan. Counts 1, 2, 3, 4, 7, and 8 arise from the PPP loan applications submitted to Northeast Bank through Lendio. Counts 5 and 6 arise from the PPP loan applications submitted directly to Meridian Bank. The PPP application that generated count 6 resulted in the $10,000,000 loan from Meridian Bank to ABE. Count 9 arises from the Defendants transferring the PPP loan proceeds to a different Meridian Bank account in May 2020. Count 10 was added after Defendants filed their Motion to Dismiss.

## STANDARD OF REVIEW

"The Federal Rules of Criminal Procedure encourage the pretrial resolution of a number of important, and even some potentially dispositive, matters." *United States v. Pope*, 613 F.3d 1255, 1258 (10th Cir. 2010). Rule 12 authorizes parties to raise pretrial motions "that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b). At the pretrial stage, the district court may only dispose of motions that do not require a determination of "guilt or innocence." *Pope*, 613 F.3d at 1259 (citation omitted). "If contested facts surrounding the commission of the

offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Id.* The court should not invade the role of the jury by holding a "mini-trial" prior to the actual trial. *Id.* In considering a pre-trial criminal motion to dismiss, the court accepts all well-pled allegations in the Indictment as true. *United States v. Sampson*, 371 U.S. 75, 78–79 (1962). The court may dismiss a charged offense if the facts alleged in the Indictment fail to establish the elements of the offense. *United States v. King*, 581 F. 2d 800, 802 (10th Cir. 1978). "But [an indictment] may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *Id.*

## ANALYSIS

Defendants seek dismissal on three grounds. First, they ask that the court dismiss counts 1–5, 7 and 8 for multiplicity with count 6. Second, they ask that the court dismiss count 6 because they allege that the United States cannot prove that Defendants knowingly made a false statement to Meridian Bank, which is a necessary element of an 18 U.S.C. § 1014 violation. Third, assuming counts 1–8 are dismissed, Defendants request that the court dismiss count 9 because the loan proceeds forming the predicate for count 9 would not be considered as property derived from unlawful activity. The court denies Defendants' motion.

### I.     Multiplicity of Counts 1–5, 7, 8

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997) (internal citation omitted). In an indictment, "multiplicity is not fatal," but courts should not allow multiplicitous convictions because they violate the Double Jeopardy Clause. *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal citation omitted). Multiplicity occurs when defendants are charged with violating different criminal statues for the same conduct, or when defendants are

charged with multiple violations of the same statute for contemporaneous conduct that may be considered as one criminal transaction. *See United States v. Patterson*, 760 F. Supp 2d 1116, 1120 (D.N.M. 2009). "The test for multiplicity is whether the individual acts alleged in the counts at issue are prohibited, or the course of conduct which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty." *McCullough*, 457 F.3d at 1162 (internal quotation marks omitted). *Compare United States v. Pierce*, 733 F.2d 1474 (11th Cir. 1984) (charging defendant for two separate violations of 18 U.S.C. § 1014 for two false statements made on the same document was multiplicitous) *with United States v. Bettenhausen*, 499 F.2d 1223 (10th Cir. 1974) (charging defendant with four violations of 18 U.S.C. § 1001 for four exhibits supporting a single tax return was not multiplicitous).

A court may, but is not required, to dismiss multiplicitous charges at the pretrial stage. *See United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007). As an alternative to dismissing multiplicitous charges, the court may order the United States to elect between multiplicitous counts prior to trial. *See Johnson*, 130 F.3d at 1426. Alternatively, the court may allow the United States to proceed on multiplicitous charges at trial, and then provide appropriate jury instructions. *See United States v. Bolt*, 776 F.2d 1463, 1467–68 (10th Cir. 1985) (providing the jury with instructions to combine two separate counts of violating 18 U.S.C. § 1014 into one offense). If the defendant is convicted on multiplicitous charges, the court must vacate the multiplicitous convictions so that the defendant is only sentenced once. *See United States v. Frierson*, 698 F.3d 1267, 1270. "The risk of a trial court not requiring pretrial election is that it may falsely suggest to a jury that a defendant has committed not one but several crimes." *Johnson*, 130 F.3d at 1426 (internal citation omitted). Rather than carefully analyze the conduct, the jury may "reach a compromise verdict or assume the defendant is guilty on at least some of the charges." *Id*. (internal citation omitted).

Defendants argue that "[o]ne [loan] application means one potential violation." Reply at 4. This requires the court to make two determinations. The first is a factual determination that Defendants submitted only one final application and that the remaining applications were drafts. The second is a legal determination, conditional on the first, that Congress did not intend for multiple drafts to be prosecuted as separate violations of 18 U.S.C. § 1014.

A.   The Factual Determination

Defendants assert that they submitted only one final PPP application, the April 25, 2020 application to Meridian Bank described in count 6 of the Indictment and that the remaining applications giving rise to counts 1–5, 7 and 8 are all drafts. Defs.' Mot. Dismiss at 8. Defendants explain that counts 1–4, 7, and 8 correspond to a singular electronic Lendio application that they updated several times. When Defendants updated the Lendio application, Lendio automatically submitted a new DocuSign document to Northeast Bank without Defendants' knowledge or consent. *Id*. However, Northeast Bank treated all of the submissions as one singular application. Ex. A, Interview Notes of Brian Pinhiero, Chief Risk Officer for Northeast Bank, ECF No. 39-1. Defendants argue that the charges relating to the Northeast Bank applications (1–4, 7 and 8) should be dismissed because Defendants did not know that Lendio transmitted the drafts to Northeast Bank and Defendants never intended to file the applications. Defs.' Mot. Dismiss at 8.

At this stage, it would be premature for the court to dismiss counts 1–4, 7, and 8. First, the determination of whether Defendants knew or should have known that Lendio would relay the information to a bank is an evidentiary matter. At the pretrial stage, the court determines whether the facts alleged in the indictment are sufficient to support a § 1014 violation. Section 1014 applies both when Defendants present the false information directly to a lending institution and when Defendants present the information to a third party who the defendant should know will relay the

9

information to a lending institution. *United States v. Johnson*, 732 Fed. App'x 638, 648–50 (10th Cir. 2018). The Indictment alleges that Defendants "did knowingly make and attempt to make" the false statements through Lendio, which is legally sufficient to support a § 1014 charge. Indictment at 6.

Second, the court is persuaded that the determination of the number of final applications is a matter that should be reserved for later. Although Defendants maintain that they only submitted one final PPP application, this fact is not contained within the Indictment. In general, "[c]ourts should refrain from considering evidence outside the indictment when testing its legal sufficiency." *United States v. Hall* 20 F.3d 1084, 1087 (10th Cir. 1994). A court may consider facts outside the indictment in "limited circumstances where (1) the operative facts are undisputed and (2) the government fails to object to the district court's consideration of those undisputed facts, and (3) the district court can determine from them that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *Pope*, 613 F.3d at 1260 (quoting *Hall*, 20 F.3d at 1088). But here, the United States ardently disputes the fact that the April 25 application to Meridian Bank constituted one final application and objects to the court's consideration of that alleged fact. Response at 6. And whether any or all of the applications were "final" is unquestionably material to the outcome of counts 1–5, 7 and 8. *Id*. In short, this is not a circumstance where an undisputed fact outside the Indictment has been introduced to the court without the United States' objection.

B. The Legal Determination

Having declined to dismiss the counts as multiplicitous as a factual matter, the court now considers whether Congress intended that multiple draft applications be prosecuted as separate violations of 18 U.S.C. § 1014. This inquiry requires that the court first look at the express statutory

10

language, and then the legislative intent. *Dennis v. Poppel*, 222 F.3d 1245, 1251 (10th Cir. 2000). 18 U.S.C. § 1014 in relevant part states: "Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . ."[2] The language does not expressly state whether drafts are meant to be charged as separate offenses.

The United States argues that the use of the singular term "any false statement" indicates that Congress intended for multiple applications regarding the same transaction to be considered independent violations of 18 U.S.C. § 1014. In *Bettenhausen*, 499 F.2d at 1234, the Tenth Circuit rejected defendants' claims that four separate charges under 18 U.S.C.A. § 1001[3] for the simultaneous submission of several documents in connection with one tax return were multiplicitous. Even though the documents were connected to one underlying offense, the Tenth Circuit concluded that Congress intended to prosecute *each* false statement or writing as a separate offense because defendants were charged pursuant to a clause of § 1001 that used the singular term "any false writing or document," while a separate clause of § 1001 used the plural term "fraudulent statements or representations." *Id*. Like 18 U.S.C.A. § 1001, 18 U.S.C. § 1014 uses the singular term "any." However, unlike in § 1001, the use of the singular tense is less convincing in determining the meaning of § 1014 because § 1014 does not provide a separate clause that uses the plural term.

---

[2] The accounts of both Meridian Bank and Northeast Bank, the recipients of Defendants' PPP loan applications, are FDIC insured.

[3] 18 U.S.C.A. § 1001 provides: "Whoever . . . knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictious or fraudulent statements or representations, or makes or uses any false writing or document . . . ."

11

When the statutory language does not clearly articulate whether the conduct at issue constitutes a single transaction or whether it comprises distinct episodes that can be punished separately, this circuit applies the same evidence test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). *Poppel*, 222 F.3d at 1251 (10th Cir. 2000). "The same-evidence test 'provides that offenses charged are identical in law and fact only if the facts alleged in one would sustain a conviction if offered in support of the other.'" *United States v. Mier-Garces*, 967 F.3d 1003, 1016 (10th Cir. 2020) (internal citation omitted).[4] "The central question is often whether the underlying conduct is part of the same transaction or comprises distinct episodes that can be punished separately." *Patterson*, 760 F.Supp. 2d at 1120; *see e.g.*, *Poppel*, 222 F.3d at 1251 (holding that two convictions under the same statute did not violate the Double Jeopardy Clause because defendant "plainly committed two separate offenses of distribution").

Defendants argue that submitting multiple drafts of one application should constitute only one offense because "the making of a number of false statements to a lending institution in a single document constitutes only one criminal violation under 18 U.S.C. § 1014." *Pierce*, 733 F.2d at 1474 (internal citation omitted); *see also Bolt*, 776 F.2d at 1463. The court is not persuaded that *Pierce* and *Bolt* can be extended to support this argument. If the United States had charged Defendants once for mispresenting that ABE had $4.5 million monthly payroll expenses, and a second time for ABE stating that it had 420 employees *on the same document*, then the charges

---

[4] Defendants argue that the *Blockburger* test is inappropriate because *Blockburger* determines whether charges under two separate statues violate the Double Jeopardy clause. In *United States v. Mier-Garces*, the Tenth Circuit explained that "*Blockburger* itself is not a same-evidence test, but, rather, a 'same elements' test . . . ." 967 F.3d at 1022. When applied to determine whether two charges under the same statute violate the Double Jeopardy Clause, "*Blockburger* has simply functioned historically as a sound analogy for our formulation of the same-evidence test—not as on-point, controlling precedent." *Id.*

would be multiplicitous. But Defendants are not making this argument. Rather, Defendants argue that the cases can be read more broadly to state that the United States should, pursuant to 18 U.S.C. § 1014, charge multiple draft submissions, each on a separate document, in connection with one loan application as one offense.

The court finds the Ninth Circuit's opinion in *United States v. Kennedy*, 726 F.2d 546 (1984) instructive.[5] In *Kennedy*, the Ninth Circuit held that charging the defendant with three separate violations of § 1014 for three separate documents filed in connection with one credit

---

[5] The court is less persuaded on the applicability of the Fifth Circuit's decision in *United States v. Miranne*, 688 F.2d 980 (5th Cir. 1982) and the Eleventh Circuit's decision in *United States v. Glanton*, 707 F.2d 1238 (11th Cir. 1983). In *Miranne*, the defendant was charged with forty-two separate counts of violating 18 U.S.C. § 1014 after he photocopied one loan application that contained a false statement forty-two times and used the application for forty-two separate loans. 688 F.2d at 986. The Fifth Circuit held that the case did not involve "a single false statement and a single transaction" as there were forty-two separate transactions involving separate files, pieces of property, promissory notes, legal fees, and checks issued. *Id.* Under the Indictment, it is less obvious that counts 1–8 are separate transactions. Defendants allege that they intended to obtain only one PPP loan. Defs.' Motion Dismiss at 8. Indeed, the Borrower Application Form requires the applicant to certify that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." ABE Borrower Application Form at 2, ECF No. 41-1.

In *Glanton*, 707 F.2d at 1239, the defendant was charged with three separate violations of 18 U.S.C. § 1014 in relation to one transaction to defraud. The first violation was for opening a bank account under a false name, the second was for endorsing a $12,000 check under the false name, and the third was for endorsing a second $9,000 check, nine days after the second check was endorsed. *Id.* The Eleventh Circuit held that the counts were not multiplicitous because each count required proof of a fact that the other counts did not. *Id.* at 1240. Although the false statements were related, they were made on separate documents. *Id.* The United States argues that *Glanton* supports the proposition that even if Defendants had only engaged in one fraudulent PPP loan transaction, each application submission qualifies as an independent false statement. However, unlike *Glanton*, here Defendants characterize each submission not as separate false statements, but updated versions of the same false statement. In *Glanton*, the Eleventh Circuit noted that "[g]iven that each count in the indictment was stated in clear, simple terms, and that the evidence as to each was strong, we cannot conclude the indictment confused or prejudiced the jury." *Id.* But *Glanton* does not hold that multiple drafts of one application are separate offenses under 18 U.S.C. § 1014.

13

application was not multiplicitous because each charge required proof of a fact that the other charges did not. *Id.* at 547–48. Even though all three documents contained the same false statement and were executed for the purpose of obtaining one loan, the court concluded that for the purpose of § 1014, "[i]t is the false statement, not the anticipated loan, which defines the crime." *Id.* at 548. However, *Kennedy* is distinguishable from the current case because each count in *Kennedy* arose from a separate document, which then caused the bank to engage in a distinct activity (advancing a line of credit, disbursing funds, and then maintaining payment flows). Here, counts 1–8 allegedly are different versions of one PPP application that share the same intended effect of convincing a single bank to grant one PPP loan.

While the concern with multiplicity in this case is stronger than in *Kennedy*, the court is not inclined to dismiss counts 1–5, 7 and 8 at this early stage of the proceedings. Each count requires proof of a unique factual combination of application date and bank. Even though the multiplicity concerns vary in degree depending on the counts, not all of the counts are multiplicitous. The counts related to the Northeast Bank applications (1–4, 7 and 8) are not multiplicitous with the counts related to the Meridian Bank applications (5 and 6) because they require proof, specifically, of different banks. Even if the court were to accept Defendants' theory that multiple applications to the same bank are simply amendments to the same application, if the amended application contains a new or materially different false statement, then it may constitute a separate §1014 violation.[6] The strongest multiplicity concern occurs when the only material

---

[6] With respect to the Northeast Bank applications, from count 1 to count 2, Defendants amended the application so that the number of employees increased from 100 to 105. In count 4, Defendants updated the number of employees from 105 to 430. In count 7, Defendants changed the payroll estimate from $4 million to $4,770,583. With respect to the Meridian Bank applications, from count 5 to count 6, Defendants increased payroll estimates from $4,769,583 to $4,770,583.

14

difference between the applications is that a prior application was resubmitted at a later date.[7] If the court becomes convinced that the counts are multiplicitous and will confuse the jury or unduly prejudice Defendants, the court can address these concerns through a variety of remedies, such as requiring the United States to elect between counts prior to trial or dismissing some of the counts before submitting the case to the jury. But at this stage, the court declines to dismiss the counts due to multiplicity concerns.

## II.     Count 6

Having addressed the multiplicity concerns, the court moves to Defendants' contention that the Indictment is insufficient because the United States cannot prove that Defendants knowingly made a false statement when their PPP application is viewed as a whole. Defendants argue that the additional materials they included in their application made it clear to Meridian Bank that ABE was a new business and did not have a history of payroll.[8] The United States responds that whether the Defendants knowingly made a false statement is a factual determination, and that Defendants are effectively requesting dismissal on the grounds of insufficient evidence. However, the United States has not yet had the opportunity to present their evidence on this matter. The Indictment

---

[7] The Indictment alleges that the only difference between counts 2 and 3 and counts 7 and 8 was that count 3 was submitted two days after count 2, and count 8 was submitted one day after count 7.

[8] Without further evidentiary context, the court is not persuaded that the additional application materials presented by the Defendants mandate dismissal at this stage of the proceedings. First, guidance from the Treasury Department on whether businesses owned by large companies with sufficient liquidity qualify for a PPP loan is irrelevant. Defs.' Mot. at 9. Second, Ms. Baver's Good Faith Certification letter includes both language implying that the payroll and employment numbers refer to the future, and language implying that they refer to the past. *Id.* at 10. Third, the email correspondence between Defendants and Meridian Bank demonstrates that Defendants were unclear on whether ABE qualified for a PPP loan. ECF No. 39-4.

alleges that Defendants knowingly made false statements regarding ABE's monthly payroll and the number of its employees to Meridian Bank. Indictment at 6. Taking these allegations as true, the indictment properly charges a § 1014 violation. At the pretrial stage, an "indictment may be dismissed if it is insufficient to charge an offense. But it may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *King*, 581 F. 2d at 802. Defendants are requesting that the court determine whether the evidence demonstrates that Defendants knowingly made false statements. However, it would be inappropriate for the court to make this determination at this preliminary stage.

### III.     Count 9

Defendants ask the court to dismiss count 9 in the event that the court dismisses counts 1–8. Count 9 of the Indictment charges Defendants with money laundering in violation of 18 U.S.C. § 1957. In order to demonstrate a violation of § 1957, the United States must prove that the transaction involved "criminally derived property." 18 U.S.C. § 1957. If the court were to dismiss counts 1–8, then the transaction proceeds would not be criminally derived and dismissal of count 9 would be appropriate. However, because the court declines to dismiss counts 1– 8, Defendants' argument regarding count 9 is moot.

### CONCLUSION AND ORDER

The court concludes that it would be premature to dismiss counts 1–5, 7, and 8 for multiplicity, and that the facts alleged in the Indictment are sufficient to support count 6. Thus, the court DENIES Defendants' motion to dismiss counts 1–9 of the Indictment.

DATED December 7, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

17